## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ESSEX INSURANCE COMPANY,       )
                               )
            Plaintiff,         )
                               )
v.                             )        Case No. CIV-12-1022-D
                               )
SHEPPARD & SONS                )
CONSTRUCTION, INC., *et al.,*   )
                               )
            Defendants.        )

## O R D E R

Before the Court is the Dental Lodge, PLC and Gabe D. Nabors' Motion for Partial Summary

Judgment Against Plaintiff, Essex Insurance Company with Brief in Support [Doc. No. 148].

Plaintiff has responded to the motion [Doc. No. 161] and the moving defendants have replied [Doc.

No. 165]. The matter, therefore, is fully briefed and ready for decision.

## I.    Background

In this declaratory judgment action, Plaintiff, Essex Insurance Company (Essex), seeks a

declaratory judgment that it has no duty to defend or indemnify its insured, Defendant Sheppard &

Sons Construction, Inc. (Sheppard), for damages to a dental facility owned by the moving defendants

the Dental Lodge, PLC and Gabe D. Nabors (collectively, the Dental Defendants). Sheppard acted

as general contractor for construction of the dental facility.

After this lawsuit was commenced, the Dental Defendants brought suit in Oklahoma state

court against Sheppard and others for property damage to the dental facility. *See* Petition [Doc. No.

121-12], Case No. CJ-2013-1236-L, District Court of Cleveland County, State of Oklahoma

(Petition). The Dental Defendants allege that the property damage resulted from the negligence of

Sheppard and the other defendants named in both this action and the state court action. These other defendants provided supplies and services for the construction of the dental facility.[1]

In the Second Amended Complaint [Doc. No. 107], Essex alleges that coverage is lacking and relies upon the following provisions of the subject policies: (1) the lack of an "occurrence;" (2) the "Damage to Your Work" exclusion; (3) the "Damage to Your Property" exclusion; and (4) the "Movement of Land or Earth" exclusion. Essex has independently moved for summary judgment in its favor on grounds the "Movement of Land or Earth" exclusion precludes coverage and therefore, does not obligate Essex to defend or indemnify Sheppard. In a separate order, the Court has denied Essex's motion, finding the exclusion does not preclude coverage for property damage resulting from allegedly defective fill work and/or fill material.

The Dental Defendants state that they move for partial summary judgment as to the first and second claims for relief alleged in the Second Amended Complaint. *See* Motion at p. 6.[2] However, the arguments raised by the Dental Defendants (and responded to by Essex) relate to the first and third claims for relief. The Court, therefore, addresses those claims which allege:

> **First Claim**: The Policies do not provide coverage because the claimed faulty workmanship was not an "occurrence" under the Policies.

> **Third Claim**: The Policies do not provide coverage because the Dental [Defendant's] claim only seeks damages to restore, repair or replace the Facility, which is excluded under the Damage to Property Exclusion.

_____

[1]One of those defendants specifically referenced in the parties' current briefing is C&D Dozer Services, LLC. The Petition alleges that C&D Dozer Services, LLC "performed certain work including moving and compacting fill dirt onto the building site in which the [Dental] Facility would be constructed" and "performed such work in a negligent, unworkmanlike manner, including failure to properly compact, strengthen, and/or secure the fill dirt material." *Id.*, ¶ 13

[2]Citations to the parties' pleadings and exhibits will refer to this Court's CM/ECF pagination.

*See id*. at pp. 9, 10.[3] The Dental Defendants contend the property damage at issue was caused by an occurrence and, therefore, is covered under the policies. The Dental Defendants further contend that the "Damage to Property" exclusion, and specifically, paragraph j(6) of that exclusion, does not preclude coverage for all property damage at issue. Accordingly, the Dental Defendants maintain that because the possibility of coverage exists, Essex has breached its contractual duty to defend and is not entitled to a declaratory judgment that is has no such duty. The distinct issue of Essex's duty to indemnify is not presently before the Court.

## II.    <u>Governing Standard</u>

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id*. at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id*.

---

[3]The second claim for relief provides:

> **Second Claim**: The Policies do not provide coverage because the "property damage" alleged falls within the "Damage to Your Work" Exclusion.

*Id*. at p. 10. As acknowledged by Essex, "[n]o party, including Essex, has moved for summary disposition of Essex's Second Claim for Relief discussing the 'Damage to Your Work' exclusion." *See* Response at p. 5, footnote 2.

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed.R.Civ.P. 56(c)(1)(A). A district court has discretion to go beyond the cited materials and consider other materials in the record, but it is not required to do so. *See Adler*, 144 F.3d at 672; Fed.R.Civ.P. 56(c)(3). The court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### III.   <u>Material and Undisputed Facts</u>

The parties do not dispute that at all applicable times, Essex insured Sheppard under two commercial general liability policies (collectively, the Policy).[4] The parties further do not dispute that "Essex has no evidence, and has made no assertions, that Defendants Sheppard or C&D Dozer Services, LLC, intentionally provided allegedly defective work."[5]

---

[4]The provisions at issue are identical under each of the policies. For ease of reference, the Court refers to the policies in the singular.

[5]The Dental Defendants parenthetically reference "fill material" as the "allegedly defective work" at issue. *See* Motion at p. 3, Statement of Undisputed Material Facts, ¶ 2. Essex disputes the parenthetical reference to the extent it implies "that the only defective work claimed in the [underlying state court] litigation relates to fill material. *See* Response at p. 3.

**IV.**   <u>**Discussion**</u>

The following provisions of the Policy are at issue:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY
DAMAGE LIABILITY**

**1. Insuring Agreement**

      a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which this insurance does not apply.

      b.     This insurance applies to . . . 'property damage' only if:

          (1) The . . . 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory[.]'

*See* Policy [Doc. No. 107-1] at p. 8.

**2. Exclusions**

This insurance does not apply to:

      **j.**     **Damage to Property**
          'Property damage' to

      **(6)**     That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it.

*Id.* at pp. 8, 11.

**SECTION V – DEFINITIONS**

      **13**.     'Occurrence' means an accident including continuous or repeated exposure to substantially the same general harmful conditions.

**22.** 'Your work':

      **a.** Means:

            (1) Work or operations performed by you or on your behalf; and

            (2) Materials, parts or equipment furnished in connection with such work or operations.

*Id*. at p. 18, 19, 20-21.

## A. Oklahoma Rules of Insurance Contract Construction

The parties do not dispute that Oklahoma substantive law governs the interpretation of the Policy. Under well-established Oklahoma law "[w]hen policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions. The policy is read as a whole, giving the words and terms their ordinary meaning, enforcing each part thereof." *BP America, Inc. v. State Auto Property and Casualty Ins. Co.*, 148 P.3d 832, 835 (Okla. 2005). "The construction of a policy should be natural and reasonable, viewed in the light of common sense. The result should not be absurd." *Redcorn v. State Farm Fire & Casualty Co.*, 55 P.3d 1017, 1019 (Okla. 2002) (citation omitted).

"An insurance contract is considered a contract of adhesion in Oklahoma, and is construed in favor of the insured when ambiguity remains after applying the rules of construction." *Mansur v. PFL Life Ins. Co.*, 589 F.3d 1315, 1319 (10th Cir. 2009) (*citing Dodson v. St. Paul Ins. Co.*, 812 P.2d 372, 376 (Okla. 1991)). "The interpretation of an insurance contract and whether it is ambiguous is a matter of law for the Court to determine and resolve accordingly." *Dodson*, 812 P.2d at 376.

**B.**    **Property Damage Resulting from Faulty Workmanship May Constitute an Occurrence Under the Policy**

The Policy covers property damage caused by an "occurrence." The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Policy, Section V, ¶ 13. The word "accident" is not defined by the Policy.

For purposes of the instant motion for partial summary judgment, the parties do not contend the Policy terms at issue are ambiguous. Yet, each party urges a contrary construction of those terms.

Both parties rely on *United States Fidelity & Guar. Co. v. Briscoe*, 239 P.2d 754 (Okla. 1951), for the proposition that under well-settled Oklahoma law, the term "accident" when used in an insurance contract, has no technical legal meaning but instead, should be construed "according to common speech and common usage of people generally." *Id*. at 756.  *See also Emcasco Ins. Co. v. CE Design, Ltd.*, 784 F.3d 1371, 1379 (10th Cir. 2015) ("Oklahoma defines 'accident' using a plain language, dictionary meaning: '[a]n event that takes place without one's foresight or expectation; an undersigned, sudden and unexpected event, chance, contingency.'") (*quoting Briscoe*, 239 P.2d at 757)). The parties dispute whether damages to the dental facility resulting from the alleged unworkmanlike or negligent construction by Sheppard and other defendants constitutes an accident.

The Dental Defendants rely upon the lack of any intentional wrongdoing by Sheppard and the other defendants to support a finding that the property damage at issue resulted from an accident and therefore is a covered occurrence under the Policy.  Essex contends that "Oklahoma state courts have not yet determined whether faulty workmanship constitutes an 'accident' within liability

policies." *See* Response at p. 11. Essex relies upon Tenth Circuit case law applying the law of other jurisdictions and contends that if an insured performs a voluntary act, the natural results of the insured's act – including unworkmanlike or negligent construction – do not constitute an occurrence. *See id*. at pp. 12-15.

Essex correctly states that no Oklahoma case directly addresses whether an insured's negligent construction or faulty workmanship constitutes an accident for purposes of determining whether occurrence coverage exists under a commercial general liability insurance policy. But a review of Oklahoma case law defining the term accident shows the result urged by Essex is contrary to that authority.

Because both parties rely on *Briscoe* and that decision is one of the leading Oklahoma cases to define accident in the insurance coverage context, the Court begins with a review of that case. In *Briscoe*, landowners brought a nuisance action against a contractor hired to construct a cement highway. The landowners alleged that for a period of approximately four months cement dust from the construction project permeated and saturated the air causing injury to person and property. The landowners notified the contractor but efforts undertaken by the contractor during the four-month period to remediate the problem were unsuccessful. Litigation ensued.

The contractor's insurance company declined to defend the contractor in the litigation and contended the damages at issue were not covered as they did not result from an accident as required by the terms of the policy. The Oklahoma Supreme Court agreed. Significant to the court's conclusion was the fact that the contractor's actions "could have been abated by injunction" and thus, "both the *means* and *result* were, in no sense, accidental. *Id*. at 758 (emphasis added). As the court found, the claims "were predicated upon a series of acts, which continued approximately four

8

months, and, at all times, voluntary, *intentional, tortious and wrongful*, resulting from negligent conduct of contractor." *Id*. (emphasis added). Thus, the resulting injury was "to be expected." *Id*. at 757.

In *Penley v. Gulf Ins. Co.*, 414 P.2d 305 (Okla. 1966), the Oklahoma Supreme Court again addressed the issue of what constitutes an accident for purposes of coverage, but this time under a commercial-use vehicle liability policy. In *Penley*, the plaintiff's employee damaged a customer's motor grader when the employee mistakenly put regular gasoline rather then diesel fuel in the motor grader. The customer sued the plaintiff for the resulting damages and the plaintiff's insurance company denied that the policy covered the conduct at issue. The insurance company refused to pay the damages or defend the plaintiff and the plaintiff then brought suit against it.

Under the terms of the policy, coverage existed as to damages "caused by accident and arising out of the ownership, maintenance or use of the automobile." *Id*. at 308. The insurance company argued that "the act of [the] plaintiff's employee was *voluntary* and the damage was the *natural result of the act*; that even though the result may have been unforeseen and unintended, there is no coverage for damages caused by the mistake or error of the employee." *Id.* (emphasis added).

In its analysis of the issue, the court noted that simply because damage may result from negligence, which incorporates the concept of foreseeability, that factor "does not deprive the occurrence of its accidental nature." *Id*. (citation omitted). The court further stated: "[a]lthough an intentional or willful tort would negative the existence of an accident an act attributable solely to negligence may be an accident" and to exclude coverage for such conduct would "manifestly defeat the purpose of the policy." *Id*. at 308-09 (citations omitted). The court concluded:

The petition readily admits that the acts of plaintiff's employee were negligent and that he intentionally delivered fuel to and placed same in grader. However, there is no allegation nor is their any contention by either party that this employee *intentionally or deliberately* placed regular gas in this diesel engine instead of diesel fuel, nor that this employee *intentionally or deliberately* intended to damage the grader. . . . *Here we merely have an act of negligence completely void of any intent to inflict injury or damages upon this property.*

We are of the opinion and hold that the alleged acts in the instant action which caused the resulting damages were 'caused by accident.'

*Id*. at 309-10 (emphasis added).

A review of *Briscoe* and *Penley* make clear that the voluntariness of the conduct, as urged by Essex, is not the determinative factor. In *Briscoe*, though the damages resulted from voluntary acts, the court specifically found the voluntary acts were "intentional, tortious and wrongful" and the resulting damage, therefore, to be expected. And in *Penley*, the court relied upon the absence of any intentional or deliberate conduct designed to inflict injury or damage upon property. Moreover, recent pronouncements by federal courts applying Oklahoma law demonstrate Essex's position lacks merit. *See Automax Hyundai South, LLC v. Zurich American Ins. Co.*, 720 F.3d 798, 804 (10th Cir. 2013) (under Oklahoma law, "[n]egligent conduct that, although voluntary, produces an unexpected result will be deemed an 'accident'" for purposes of determining whether occurrence coverage exists) (*citing Penley*, 414 P.2d at 209).

In *Automax*, the insured, Automax Huyndai South (Automax), brought a declaratory action against its insurer, Zurich American Insurance Company (Zurich) alleging Zurich had a duty to indemnify Automax for damages arising from a jury verdict for an occurrence Automax contended was covered by the applicable insurance policy.

In the underlying state-court litigation, an individual, Tammy Moses, and her father, David Moses (the Buyers) purchased a car from Automax. At the time the car was purchased, Automax

represented the car was new.  When the Buyers discovered defects in the car shortly after its purchase, they filed a lawsuit and brought multiple claims against Automax including a claim for fraud/deceit.  A jury returned a verdict in favor of the Buyers on their claim for fraud/deceit as well as their claims for negligence and a violation of the Truth in Lending Act.

Automax then brought suit against Zurich alleging breach of the duty to defend and indemnify in the Buyers' litigation.  The policy provided "occurrence" coverage for "an accident" that results in injuries "neither intended nor expected from the standpoint of a reasonably prudent person." The district court entered summary judgment in favor of Zurich finding that the claims against Automax – including the negligence claim – were premised on intentional conduct and, therefore, Zurich had no duty to defend Automax under the occurrence provision of the policy.

The Tenth Circuit reversed and held that Automax's conduct constituted an  accident under the policy. *Id*. at 805. To reach this conclusion, the Tenth Circuit first "parse[d] the facts" of the car purchase.  The court looked to the complaint which "indicate[d] that Automax could incur liability for three types of behavior: (1) the sale of the used car as 'new,' (2) the sale of the car with undisclosed damage, and (3) the terms and manner of the financing.

Automax focused on the second type of behavior and argued that the lawsuit "contemplate[d] the possibility that Automax did not know of the damage when it sold the [car] to the [Buyers] and violated the ordinary duty of care by failing to detect the damage." *Id*. at 805. The court concluded that "the failure to detect damage in a car constitutes an 'accident' (and thus an 'occurrence') under the terms of the policy, because a dealership *neither expects nor intends to cause injury to its customers when it sells a car that it believes is in perfect condition.*" *Id*. (emphasis added) (*citing Penley*, 414 P.2d at 309 (accident can encompass a voluntary act where the injury that resulted was

neither intentional nor likely)).  In reaching this conclusion, the court noted that "[o]ther courts similarly conclude that an insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct."  *Id*. at 806-07 (citing cases).

The Tenth Circuit's decision in *Automax* is consistent with other cases construing Oklahoma law.  *See, e.g., Employers Mutual Cas. o. v. Grayson*, Case No. CIV-07-917-C, 2008 WL 2278593 at *5 (W.D. Okla. May 30, 2008) (unpublished op.) (where undisputed facts demonstrated insured did not knowingly deliver defective concrete, resulting damage to bridge deck and its structural components during the required removal of the defective concrete was the "unintended consequence of insured innocently suppling a non-conforming product" and therefore a covered occurrence under the policy); *Lutheran Benev. Ins. Co. v. National Catholic Risk Retention Group, Inc.*, 939 F. Supp.1506, 1513 (N.D. Okla. 1995) (Diocese's negligent retention of priest constituted an "accident" for purposes of insurance coverage despite fact that Diocese had knowledge of priest's prior misconduct as "no evidence in the record support[ed] the conclusion that the Diocese *intended* to cause bodily injury to [victim] . . . or that the Diocese *expected* that such a result would occur").

The cases holding an occurrence is not accidental under Oklahoma law further inform the analysis.  Those cases clearly involve intentional conduct wholly distinct from the negligent conduct arising from the alleged faulty workmanship at issue here.  *See, e.g, Shelter Mutual Ins. Co. v. Wheat*, 313 Fed. Appx. 76, 82 (10th Cir. 2008) (insured's shooting of victim at victim's house was not an accident); *Equity Ins. Co. v. Garrett*, 178 P.3d 201, 205 (Okla. Civ. App. 2008) (where insured admitted she intentionally drove her vehicle into a pedestrian, the resulting injury was not accidental).

Most recently, in *Broom v. Wilson Paving & Excavating, Inc.*, – P.3d –, 2015 WL 1541969 at *9 (Okla. April 7, 2015) (for publication), the Oklahoma Supreme Court held that an exclusion providing that the insurance did not apply to "bodily injury" or "property damage" that was "expected or intended from the standpoint of the insured" did not apply where a contractor's negligence caused a trench to collapse and injure a worker. *See id.* ("The very nature of negligence as a basis of recovery is inconsistent with activity that would produce an 'expected or intended' injury under the language in the Mid-Continent policy."). Although the *Broom* court was construing a policy exclusion and not addressing whether occurrence coverage existed, the holding further supports the result reached by this Court interpreting and applying Oklahoma law.

Essex does not address Oklahoma law. Instead, Essex relies on Tenth Circuit case law construing the law of other jurisdictions.[6] The Court finds that case law inapposite. Under controlling Oklahoma law faulty workmanship may constitute an accident (and, therefore, an occurrence) under the Policy. For purposes of the instant motion for partial summary judgment, it is undisputed that Essex makes no assertions that Sheppard or C&D Dozer intentionally provided

---

[6]Essex's reliance on *Employers Mutual Cas. Co. v. Bartile Roofs, Inc.* (*Bartile I*), 618 F.3d 1153 (10th Cir. 2010) is unavailing. In that case, the Tenth Circuit determined that under both Utah and Wyoming law "the *natural results* of an insured's negligent and unworkmanlike construction do not constitute an occurrence triggering coverage under a CGL policy." *Id.* at 1174. (emphasis added). Oklahoma case law does not focus on the "natural results" of the insured's conduct, but instead focuses on the intended and expected result. As discussed above, clearly in *Penley* the natural result of the employee's negligent conduct in using the wrong type of fuel was damage to the subject property. But the Oklahoma Supreme Court found the natural result was nonetheless accidental because the employee's negligent conduct was devoid of any intent to inflict injury or damage. Oklahoma law, therefore, differs from the law of Utah and Wyoming in this regard. *Compare Greystone Constr. Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272, 1282-83 (10th Cir. 2011) (reviewing approaches in multiple jurisdictions and recognizing "a strong recent trend in the case law that interprets the term 'occurrence' to encompass unanticipated damage to nondefective property resulting from poor workmanship").

allegedly defective work. Because it is alleged that the property damage to the dental facility resulted from negligent conduct, such conduct may constitute an accident, and therefore an occurrence, under the Policy.[7]

### C. Exclusion j(6) – the "Particular Part " Exclusion

Exclusion j(6) of the Policy excludes from coverage property damage to "that particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *See supra* (Policy provisions). "Your work" is defined as "[w]ork or operations by you or on your behalf" and "[m]aterials, parts or equipment furnished in connection with such work or operations." *See id*.

The Dental Defendants maintain that "the particular part" of the subject property at issue is the allegedly defective "fill material beneath the foundation of the Facility Sheppard constructed for Dental Defendants." *See* Motion at p. 14. They acknowledge that "Essex may argue the defective fill material is properly excluded under (j)(6)" but that "any argument that there is no coverage for the other property damaged as a result of defective fill material fails as a matter of law." *Id*. The Dental Defendants appear to concede that the fill work was incorrectly performed and/or the fill material itself was defective, and that any property damage resulting from the need to restore, repair

---

[7]Neither party addresses allegations in the state court Petition that "[d]uring the construction process" the Dental Defendants "notified Sheppard on several occasions of problems with the construction of the Facility" but that Sheppard "represented to [the Dental Defendants] that such defects and problems were normal and/or would be repaired by Sheppard." *See* Petition at ¶ 12. These allegations may suggest intentional conduct by Sheppard, or conduct that, as in *Briscoe*, could have been abated by an injunction. But on the present record, Essex expressly makes no assertion that Sheppard or the other defendants intentionally performed the allegedly defective work. Therefore, the Court finds the possibility of coverage exists. *See also Automax*, 720 F.3d at 806 ("[A]n insurer has a duty to defend even where the facts alleged intentional conduct because at trial the jury could have found the defendant guilty merely of negligence or other nonintentional conduct.") (citation omitted).

or replace the fill material is excluded. But the Dental Defendants contend other work was not defective (*i.e.,* incorrectly performed) and damage to property from such non-defective work is not excluded. The Dental Defendants make no attempt, however, to identify the non-defective work.

Essex responds that Sheppard "was tasked with constructing the entire Facility, not just part of it" and, therefore, the "particular part" referenced in the exclusion refers to the entire facility and excludes coverage for all damages sustained. *See* Response at p. 17.[8] Alternatively, Essex contends that even if the Dental Defendants' construction of exclusion j(6) is accepted, "questions of fact exist regarding the extent of Sheppard's alleged incorrect work." *See* Response at p. 18. Essex states that the court or a jury in the state court litigation would still be required "to parse out covered and non-covered damages." *See* Response at p. 18. Like the Dental Defendants, Essex focuses on the defective fill material and incorporates by reference the facts submitted in support of its separately filed motion for summary judgment.[9]

The underlying state court Petition alleges property damage resulting from "faulty fill dirt methodology" employed by Sheppard. *See* Petition at ¶ 11. But the Petition also identifies alleged property damage caused by other defendants including faulty construction of the foundation and slab and a faulty irrigation system which caused a major water leak underneath the facility. *See id*. at ¶¶ 14-15.[10]

---

[8]The Petition filed by the Dental Defendants states that "Sheppard did in fact serve as the Plaintiff's general contractor and architect which controlled and directed the construction of the Facility." *See* Petition at ¶ 9.

[9]*See supra,* discussion at p. 2.

[10]The scope of this property damage and whether it would be excluded from coverage is not addressed by the parties.

The parties have not cited any Oklahoma law construing an exclusion similar to the exclusion at issue. Thus, this Court must predict what Oklahoma's highest court would do. *see, e.g., Specialty Beverages, L.L.C. v. Pabst Brewing Co.*, 537 F.3d 1165, 1174 (10th Cir. 2008).

The Court rejects Essex's broad construction of the exclusion that would encompass all damages to the entire dental facility. Essex bases this construction on the fact that Sheppard acted as general contractor. Although the exclusion includes under the definition of "your work," work performed by both Sheppard and its subcontractors, that fact alone is not dispositive.

By its express terms, the exclusion applies only to work *incorrectly* performed on the *particular part* of the property that must be *restored, repaired or replaced. See, e.g., Fortney & Weygandt, Inc. v. American Mfgs. Mut. Ins. Co.*, 595 F.3d 308, 311 (6th Cir. 2010) (language in policy limiting exclusion to "that particular part" is "trebly restrictive, straining to the point of awkwardness to make clear that the exclusion applies only to building parts on which defective work was performed, and not to the building generally"); *accord Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 217 (5th Cir. 2009). On the current record, the parties have provided no facts demonstrating to what extent *incorrectly performed* work has resulted in property damage.[11]

In addition, although the Dental Defendants appear to concede coverage for damage resulting from incorrectly performed fill work is excluded, the parties have not submitted facts to identify the scope of that damage. *Compare Cincinnati Ins. Co. v. Spectrum Development Corp.*, No. 2:11- cv-0015-CW, 2015 WL 730020 at *7 (D. Utah Feb. 19, 2015) (unpublished op.) (interpreting similar

---

[11]Essex states in its Response, "because the Dental Defendants contend Sheppard and/or its alleged subcontractors incorrectly performed their (i.e. Sheppard's) work on the Facility, the language under Section j(6) is triggered to exclude coverage." *See* Response at pp. 20-21. But the current record contains no facts to demonstrate that all work on the Dental Facility was incorrectly performed.

exclusion and recognizing that some of the damage to the concrete slab may be caused by defective work and the natural and probable consequences of that work, while other damage may have resulted from other causes; "[s]eparating the causes of damage and the cost necessary to repair that damage are issues of fact" and "cannot be resolved on summary judgment"); *see also Roaring Lion, L.L.C. v. Nautilus Ins. Co.*, No. 11-2-M-DWM-JCL, 2011 WL 3956132 at * 7 (D. Mont. July 15, 2011) (unpublished op.) (concluding that "exclusion j(6) must be read as applying only to that particular part of the Sawtooth Cabin on which defective work was performed" and concluding that material disputed facts as to whether damage to framing was caused by defective work on the framing, such that coverage would be excluded or from subcontractor's foundation work, such that coverage would exist, precluded summary judgment). Issues of fact, therefore, remain as to the scope and cause of the property damage at issue. Accordingly, summary judgment is not proper as to whether exclusion j(6) precludes coverage.

### D.      Duty to Defend

Having considered the policy coverage and exclusion issues presented, the Court must now address the Dental Defendants contention that they are entitled to partial summary judgment in their favor on the issue of Essex's duty to defend. The Dental Defendants move for the entry of partial summary judgment on grounds the *possibility* of coverage exists and triggers the duty to defend.

Under Oklahoma law, "[t]he duty to defend is separate from, and broader than, the duty to indemnify, but the insurer's obligation is not unlimited." *First Bank of Turley v. Fidelity & Deposit Ins. Co. of Md.*, 928 P.2d 298, 303 (Okla.1996). The duty to defend is triggered whenever the insurer "ascertains the presence of facts that give rise to the *potential of liability* under the policy." *Id.* (emphasis in original). The potential for liability exists "whenever the allegations in a complaint state

a cause of action that gives rise to the *possibility of a recovery* under the policy; there need not be a *probability of recovery*." *Id*. at 303 n. 14 (*quoting* 7C Appleman, *Insurance Law and Practice* § 4682 (Berdal ed. 1979) (emphasis in original). This determination is made by looking to information "gleaned from the petition (and other pleadings), from the insured and from other sources available to the insurer at the time the defense is demanded." *Id*. "While the initial burden to request a defense is on the insured, once that request is received the insurer bears the burden of investigating the underlying facts and determining whether they trigger coverage." *Automax*, 720 F.3d at 804 (citation omitted). An insurer "must defend an action in which damages that are potentially within the policy's coverage are sought, even though coverage may ultimately not be afforded." *Turley*, 928 P.2d at 304, n. 16 (emphasis in original). *See also Automax*, 720 F.3d at 804 ("The duty to defend is triggered by the facts reasonably available at the time the defense is demanded, not by the outcome of the lawsuit."). Finally, where at least some of the insured's conduct may be covered, the insurer has a duty to defend all the claims. *Automax*, 720 F.3d at 806 (holding that no authority demonstrates that Oklahoma law would deviate from the majority rule that "once an insurer's duty to defend is triggered, it must defend all the claims in a lawsuit – both covered claims and claims for which no coverage exists).

The Policy provides that Essex has "no duty to defend the insured against any 'suit' seeking damages for . . . 'property damage' to which [the] insurance does not apply." *See* Policy provisions, *supra*. Relying upon the Policy's Movement of Land or Earth exclusion, Essex states that "the information known to Essex at the time Sheppard's defense was demanded showed that there was **not** a possibility of coverage under the [Policy] . . . ." *See* Response at p. 8 (emphasis in original). The information known to Essex included expert opinions that settling of fill material caused, at least

in part, property damage to the Dental Facility.[12] But the Court has determined that the Movement of Land or Earth exclusion does not preclude coverage as to property damage resulting from the settling of fill material.  Therefore, Essex cannot rely on this exclusion as support for establishing it has no duty to defend.

Essex also contends that "the information known to Essex also showed that the Dental Defendants' damages were not caused by an 'occurrence' providing yet another basis for why Essex does not owe any duty to defend or indemnify any party to the [underlying state court litigation]." *Id*. at pp. 8-9. As set forth above, the Court finds the negligent conduct alleged in the state court Petition and the undisputed fact that Sheppard did not intentionally provide defective work, gives rise to occurrence coverage. Therefore, Essex cannot rely upon the lack of an occurrence to establish it has no duty to defend.[13]

The only remaining exclusion is the j(6) "particular part" exclusion.  Essex concedes that questions of fact exist as to the "extent of Sheppard's alleged incorrect work."  *Id*. at p. 21. Under theses circumstances, the possibility of coverage exists. *Compare Mount Vernon Fire Ins. Co. v. Okmulgee Inn Venture, LLC*, 451 Fed Appx. 745, 748 (10th Cir. 2011) (applying Oklahoma law and construing policy that provided insurer had no duty to defend a "'suit' seeking damages for 'injury'

---

[12]Those expert opinions are more fully set forth in  Essex's motion for summary judgment which Essex adopts and incorporates in its response to the pending motion. *See* Response at pp. 6-7.

[13]Based on theses findings, Essex's reliance on *Boggs v. Great Northern Ins. Co.*, 659 F. Supp.2d 1199 (N.D. Okla. 2009) is misplaced. In *Boggs*, the court found no duty to defend where the insurance policies at issue required a defense only for "covered damages."  The Court concluded that the face of the amended petition in the underlying litigation clearly established no claims had been raised that would have been covered under the policies and, therefore that the insurance companies could properly concluded that "no potential for liability existed."  *Id*. at 1214.  *See also Briscoe*, 239 P.2d at 758 (finding no duty to defend where insured's conduct at issue in underlying litigation was not covered under the policy).

to which this insurance does not apply," the court held that because disputed issues of fact existed as to what caused injuries, potential for coverage existed triggering duty to defend). Accordingly, Essex's duty to defend is triggered.

## V.    Conclusion

On the factual record presented, the negligent or faulty workmanship of the Defendants at issue in the underlying state court action falls within the definition of an accident under Oklahoma law and may give rise to occurrence coverage. Questions of fact exist as to whether the Policy's "Damage to Your Property" exclusion, and in particular, paragraph j(6) of that exclusion, operates to preclude coverage.  Because the Court has determined –  (1) the Movement of Land or Earth exclusion does not preclude coverage; (2) the negligent conduct at issue may give rise to occurrence coverage; and (3) questions of fact remain as to the scope of damage encompassed by the Policy's j(6) "particular part" exclusion –  Essex's duty to defend is triggered.

The Second Amended Complaint also seeks a declaration that the property damage at issue falls within the "Damage to Your Work" exclusion in the Policy.  *See id*. at ¶¶ 41-45 (Second Claim for Relief).  As stated, *see supra*, footnote 3, the parties have not briefed that exclusion in any motion pending before the Court.  The Court does not address, therefore, whether that exclusion would result in a finding that Essex does not have a duty to defend.

IT IS THEREFORE ORDERED that the  Dental Lodge, PLC and Gabe D. Nabors' Motion for Partial Summary Judgment Against Plaintiff, Essex Insurance Company with Brief in Support [Doc. No. 148] is GRANTED in part and DENIED in part as set forth herein.

IT IS SO ORDERED this 9th day of July, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE