# I N THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

ESSEX INSURANCE COMPANY,     )
                                     )
           Plaintiff,         )
                                     )
v.                                 )        Case No. CIV-12-1022-D
                                     )
SHEPPARD & SONS               )
CONSTRUCTION, INC., *et al.,*     )
                                     )
         Defendants.       )

## O R D E R

Before the Court is the Motion for Summary Judgment of Defendant C&D Dozer Services, L.L.C. (C&D Dozer) [Doc. No. 149]. Plaintiff Essex Insurance Company (Essex) has responded [Doc. No. 159] and C&D Dozer has replied [Doc. No. 166]. The matter is fully briefed and ready for decision.

## I.     Introduction

Essex brought this declaratory judgment action seeking a declaration that it has no duty to defend or indemnify its insured, Defendant Sheppard & Sons Construction, Inc. (Sheppard), under the terms of certain commercial general liability insurance policies. Insurance coverage is at issue as a result of the alleged negligent construction of a dental facility (the Dental Facility) owned by Defendants Dr. Gabe D. Nabors and The Dental Lodge (collectively, the Dental Defendants). After the commencement of this action, Sheppard was sued in Oklahoma state court by the Dental Defendants as a result of the alleged negligent construction. Sheppard acted as the general contractor and provided services and materials for construction of the Dental Facility. Defendant C&D Dozer is a subcontractor and performed work as part of the construction of the Dental Facility. C&D Dozer is also sued by the Dental Defendants in the state court action as are additional parties who provided

work in the course of the construction of the Dental Facility.  As pertinent to the discussion below,

Sheppard and C&D are alleged to be joint tortfeasors, both contributing to the negligent construction

of the Dental Facility.

C&D Dozer moves for summary judgment on a jurisdictional question – whether there is an

actual case or controversy between Essex and C&D Dozer sufficient to warrant issuance of a

declaratory judgment.  Defendants Bituminous Casualty Corporation (Bituminous) and First Mercury

Insurance Company (Mercury), did not separately move for summary judgment.  However, in

responding to the motion for summary judgment of Essex, *see* Responses [Doc. Nos. 131, 134],

these defendants contend, like C&D Dozer, that no justiciable controversy exists.  Essex filed a reply

[Doc. No. 142] and fully addressed the arguments raised by Mercury and Bituminous, raising

essentially the same arguments as those made with respect to C&D Dozer.  *See, e.g.,* Essex's Reply

at p. 6 ("At the very least, the rights that Sheppard and C&D have against each other as co-

defendants in the state court action gives rise to a sufficient controversy between Essex and

Bituminous, their insurers."). Therefore, the Court addresses the actual case or controversy issue as

to all three Defendants in this Order.[1]

Because Defendants C&D Dozer, Bituminous and Mercury seek dismissal on grounds that

no actual case or controversy exists, the Court finds the motion for summary judgment is more

---

[1]Moreover, the Court has "an independent obligation to determine whether subject-matter jurisdiction exists" and may raise the issue *sua sponte* at any time.  *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006); *see also  Kitchen v. Herbert*, 755 F.3d 1193, 1201 (10th Cir.) (addressing existence of Article III case or controversy *sua sponte*), *cert. denied*, – U.S. –, 135 S.Ct. 265 (2014). And, "[a]n action for declaratory relief, like any other action, must still satisfy the case or controversy requirement."  *Roe v. Aegis* No.  13-cv-03040-KMT,  2014 WL 4746721 at * 8 (D. Colo. Sept. 24, 2014) (unpublished op.) (*citing  Medtronic, Inc. v. Mirowski Family Ventures, LLC*, – U.S. – , 134 S.Ct. 843, 848 (2014)).

properly treated as a motion pursuant to Fed. R. Civ. P. 12(b)(1). *See, e.g., Goodman v. United States*, 185 Fed. Appx. 725, 727 (10th Cir. 2006) ("Subject matter jurisdiction is appropriately dealt with by means of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), and we will treat the district court's summary judgment ruling as if it were a ruling on a 12(b)(1) motion.").[2]

## II.    Discussion

Federal courts are limited by Article III of the United States Constitution to hearing only "cases" or "controversies." U.S. Const. Art. III, § 2. This is a "bedrock requirement." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) Indeed, "'[n]o principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (*quoting Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 37 (1976)).

The Declaratory Judgment Act provides "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The Act, therefore, recognizes the constitutional limitation that federal courts only have jurisdiction over "cases" and "controversies." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 277, 240 (1937).

_____

[2]An exception to this rule exists where resolution of the jurisdictional question is intertwined with the merits of the case. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In such circumstances, resolution of the jurisdictional question requires resolution of an aspect of the substantive claim and requires the court to convert a motion to dismiss into a motion for summary judgment. *See id., see also Pringle v. United States*, 208 F.3d 1220, 1223 (10th Cir. 2000). Here, the Court need not consider the motion as a motion for summary judgment because the jurisdictional question does not require resolution of any aspect of the substantive claims.

The party seeking the declaration bears the burden of establishing the existence of an actual case or controversy. *Cardinal Chem. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1967). To determine whether a case or controversy exists, the court must determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941).

Even where the case or controversy requirement is satisfied, whether the power to issue a declaration of rights should be exercised is a matter within the sound discretion of the district court. *St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1168 (10th Cir. 1995). Factors the court may consider include: (i) whether the declaratory judgment action would resolve the controversy; (ii) whether the action would serve a useful purpose in clarifying legal relations between the parties; (iii) whether the action is being used for "procedural fencing" or a "race to res judicata"; (iv) whether entertaining the action would increase friction between state and federal courts and improperly encroach upon state jurisdiction; and, (v) whether a better or more effective remedy is available. *Id*. at 1169. Where a concurrent proceeding in state court encompasses the same controversy, "the federal court is not required to refuse jurisdiction" but it should not entertain the action "if the same fact-dependent issues are likely to be decided in another pending proceeding." *Id*. at 1170 (citations omitted).

C&D Dozer contends there is no actual case or controversy on the following grounds: (1) under governing Oklahoma law, C&D Dozer cannot sue Essex directly for any claim of indemnity or contribution and "C&D's insurer would have the right to seek contribution from the joint tortfeasor, not from the joint tortfeasor's insurer;" (2) Oklahoma law governing joint and several

liability "obviate[s] the need to seek indemnity or contribution from an entity named on the verdict form" as each defendant in the state court action "will be allocated a percentage of responsibility on the jury verdict form;" and (3) no contractual right of indemnity exists between C&D Dozer and Sheppard. *See* Motion at pp. 8, 9, 10. C&D Dozer further claims that Essex is impermissibly using this federal forum to litigate the state court action. C&D Dozer contends the Court has no subject matter jurisdiction to do so because the parties to the state court action are non-diverse. *See id*. at pp. 10-11. C&D Dozer's primary concern is that "this Court will make Findings of Fact to which C&D will be bound in the State Court Action" and that such findings "should not be the result of a 'Declaratory Judgment' concerning insurance coverage." *See id*. at p. 11.

Bituminous similarly contends no adverse legal interest of sufficient immediacy exists between it and Essex. And, like C&D Dozer, Bituminous relies on the fact that Oklahoma is not a "direct action" state. Mercury adopts the arguments of Bituminous.

In response, Essex urges the Court to apply the law of the case doctrine and adhere to previous rulings the Court has made finding this declaratory judgment action is proper and that the actual case or controversy requirement is satisfied. *See* Response at pp. 4-8. Alternatively, Essex states that sufficient adverse interests exist between it and C&D Dozer and relies on *Maryland Cas. Co.* for the proposition that if C&D Dozer recovers a judgment against Sheppard under any contribution or indemnity theory, the fact that C&D Dozer could in turn seek payment under Essex's policies gives rise to a sufficient justiciable controversy. *See id*. at pp. 8-9. According to Essex, the fact that joint and several liability may exist under Oklahoma law further supports its position because such liability could create issues involving contribution and indemnity that "in turn, would require determinations of insurance coverage." *Id*. at p. 11. Finally, Essex contends the coverage

issues before this Court could impact "the flow of the underlying litigation" including the prospect

for settlement and, therefore, there is a sufficient case or controversy. *See id* at pp. 11-12. Essex

alleges that Bituminous and Mercury may make subrogation claims against Sheppard, and

consequently, Essex, for benefits that may be due under C&D Dozer's policies.[3] On this basis, Essex

contends an actual case or controversy exists as against all three Defendants.

A.      **The Court's Prior Justiciability Ruling**

The Court previously denied the Dental Defendants' motion seeking dismissal of this action

on grounds of lack of a justiciable controversy.  *See* Order [Doc. No. 92].  The Court stated in its

Order the following regarding sources of insurance coverage:

> In addition to its insurance policy with Essex, Sheppard had [a] builder's risk
> insurance policy issued by Zurich and effective during the time period in which the
> dental facility was constructed.  Defendant C&D had liability and excess liability
> policies issued by Defendants Bituminous Insurance Company ("Bituminous") and
> First Mercury Insurance Company ("Mercury"), and these were effective during the
> time period in which the dental facility was constructed.

*See* Order at p. 2.  In a subsequent Order [Doc. No. 98] the Court denied as moot a motion of Zurich

to the extent "some of its arguments are similar to those asserted in the motion to dismiss filed by

[the Dental Defendants] and denied by the Court in its September 9, 2013 Order [Doc. No. 92]."[4]

The record reflects that Zurich then filed a Notice [Doc. No. 122] disclaiming any interest in the right

to seek indemnification and/or contribution from Essex with respect to any benefits Zurich may have

---

[3]*See* Essex's Reply [Doc. No. 142] at p. 5 ("Bituminous could stand to pay a judgment entered against its insured, C&D.  Any judgment so rendered and paid could be used by Bituminous, subrogated to the rights of C&D, to seek contribution from Essex.").

[4]The Court did not make any express jurisdictional ruling as to Zurich, but deemed the motion of Zurich "moot" "*to the extent that the arguments are the same*" as those raised by the Dental Defendants.  *See* Order [Doc. No. 98] at 1 (emphasis added).  Moreover, both Zurich and Essex insured the same party, Sheppard.

to pay as a result of the state court litigation. Zurich was subsequently dismissed from this action. *See* Order [Doc. No. 124].

At the time the Court entered its order on September 9, 2013, the Dental Defendants alleged "no lawsuit ha[d] been filed by another party seeking recovery from Sheppard." *See* Order [Doc. No. 92] at p. 2.[5]  On that basis, the Dental Defendants contended no justiciable controversy existed.

The Court rejected this argument. *See id*. at p. 5 *citing Columbian Financial Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1377 (10th Cir. 2011). As stated in the Court's Order, the fact that the Dental Defendants had presented a claim to Sheppard related to damages to the Dental Facility, even though no lawsuit had yet been filed, was sufficient to establish a controversy "involving the scope of coverage under the insurance policy." *Id*.

## B.     Law of the Case Doctrine

Essex maintains that the issue currently before the Court has been previously addressed and decided in the Court's September 9, 2013 Order.  Therefore, Essex seeks application of the law of the case doctrine.

As an initial matter, Essex's request for application of the law of the case doctrine is misplaced as the Court's prior order is interlocutory in nature. *See Stewart v. Beach*, 701 F.3d 1322, 1329 (10th Cir. 2012) (addressing law of the case doctrine and noting that district courts "generally remain free to reconsider their earlier interlocutory orders").[6] Moreover, the Court addressed a

---

[5]The state court action was not filed until September 30, 2013.

[6]In *Dobbs v. Anthem Blue Cross and Blue Shield*, 600 F.3d 1275, 1279-80 (10th Cir. 2010), a case cited by Essex, the Court applied the law of the case to a finding made in a prior appeal that had become final.  Similarly, in *Wilmer v. Board of County Commrs. of Leavenworth County*, 69 F.3d 406, 409 (10th Cir. 1995) the Court recognized that "[l]aw of the case principles do not bar a

(continued...)

different issue when ruling on the Dental Defendant's motion to dismiss, *i.e.*, whether a justiciable

controversy existed as between Essex and the Dental Defendants. *Cf Stewart*, 701 F.3d at 1328 n.

6 (noting that when urging application of law of the case doctrine, appellant failed to draw a

distinction between two defendants, one of whom was not a party to the case at the time the district

judge ruled on the issue alleged to be governed by the doctrine). The current motion filed by C&D

Dozer, conversely, raises the issue of the Court's subject matter jurisdiction over claims brought

against it – an issue neither explicitly or implicitly addressed in the Court's prior Order. *See Wilmer*

*v. Board of County Commr's. of Leavenworth County*, 69 F.3d 406, 410 (10th Cir. 1995)

(consideration of jurisdictional issue previously raised by dissent but not ruled on by majority was

not barred by law of the case doctrine "[b]ecause only matters actually decided, explicitly or

implicitly, become law of the case").

The justiciable controversy issue is distinct as to the respective defendants. The Dental

Defendants are allegedly injured third-parties, and, therefore, established Tenth Circuit precedent

supports the conclusion that a justiciable controversy exists as between Essex and the Dental

Defendants. *See, e.g., Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 658 (10th Cir. 1946) ("In

declaratory actions brought to determine coverage under insurance policies issued to protect the

insured against liability to third persons, third persons asserting such liability have been held to be

proper parties to a declaratory judgment proceeding, although their claims against the insurer are

contingent upon recovery of a judgment against the insured."). But C&D Dozer (and necessarily,

therefore its insurers, Bituminous and Mercury), is not an injured third-party. Instead, the only

---

[6](...continued)
district court from acting *unless an appellate decision has issued on the merits of the claim sought
to be precluded*." *Id*. (emphasis added, citation and internal quotations omitted).

relationship between C&D Dozer and Essex is that C&D Dozer is a potential joint-tortfeasor of

Essex's insured, Sheppard.  Because a different justiciability issue is now before the Court, the law

of the case doctrine presents no impediment to the Court addressing the issue.

C.      **Article III's Justiciable Controversy Requirement**

Essex argues that sufficient adverse interests exist between it and C&D Dozer to satisfy the

justiciability requirement. But Essex relies primarily on case law addressing the relationship between

an insurer and a third-party tort claimant, like the Dental Defendants, injured by the insured. *See,*

*e.g.,* Response at pp. 8-9 (*citing Maryland Casualty Co.*). As discussed below, Essex's reliance on

such case law is inapposite as the relationship at issue here is more attenuated.

Essex further contends that, under Tenth Circuit precedent, the impact of a declaratory

judgment on settlement of the state court litigation is sufficient to create a justiciable controversy.

*See* Response at pp. 9, 11-12.  Essex relies on *Kunkel v. Continental Cas. Co.*, 866 F.2d 1269, 1275-

76 (10th Cir. 1989).

In *Kunkel*, the justiciable controversy at issue was between an insurance company,

Continental Casualty Company (Continental) and its insured, Elmer Kunkel (Kunkel) an accountant.

Kunkel faced liability in underlying litigation for securities fraud violations.  He brought a

declaratory judgment action against Continental to determine the amount of coverage provided by

his malpractice insurance policy.  Without knowing the amount of coverage, settlement negotiations

in the underlying litigation were at an impasse.

Continental claimed no justiciable controversy existed because the existence of coverage was

dependent upon both the outcome of the underlying litigation charging Kunkel with securities laws

violations and a determination that any liability incurred by Kunkel was not excepted from the

policy's terms.  But the court found a justiciable controversy existed.  Important to the court's determination was the fact that settlement of the underlying litigation without a determination as to the amount of coverage was a "virtual impossibility."  *Id*. at 1275.

While *Kunkel* supports the Court's prior determination that a justiciable controversy exists between Essex and Sheppard, it does not address the type of liability implicated by the relationship currently at issue before the Court, that is the relationship between Essex and a third-party potential joint tortfeasor.  Moreover, unlike *Kunkel*, no settlement impasse is at issue here.  Therefore, the Court does not find *Kunkel* controlling.

Essex further contends the Tenth Circuit's decision in *Allendale Mut. Ins. Co. v. Kaiser Engineers, Division of Henry J. Kaiser Co.*, 804 F.2d 592 (10th Cir. 1986) supports finding the existence of a justiciable controversy.  In that case, Allendale Mutual Insurance Company (Allendale) brought a declaratory judgment action against third-party tortfeasors Kaiser Engineers (Kaiser) and Sergent Hauskins & Backwith (Sergent) and sought a declaration that if it were held liable to its insured, United Nuclear Corporation (United), it would be entitled to judgment against these tortfeasors.

United suffered damages when a dam built by Kaiser and Sergent failed, causing huge losses. Allendale denied that coverage existed under its policy with United. In underlying litigation, United sued Allendale and coverage was found to exist. United was awarded more than $24 million in damages against Allendale.  While an appeal of the damages award was pending, Allendale brought a declaratory judgment action in federal court against Kaiser and Sergent seeking a declaration that if held liable to United, it would be entitled to judgment against these defendants as subrogee of

United's claims. United brought the declaratory judgment action based on a concern that the statute of limitations on any subrogation claim would expire during the pendency of the appeal.

The Tenth Circuit found a justiciable controversy existed. *Id*. at 595. However, the court based this finding on two factors. First, "a state court had rendered a legal judgment binding upon Allendale[.]" *Id*. at 595. As the court stated: "[a]t least at the moment the insurer has suffered a legal judgment requiring it to make payment to the insured, that insurer has a sufficient interest in recovery against third parties who allegedly caused the injury to create an actual controversy within the meaning of the Declaratory Judgment Act." *Id*. at 594. Second, the fact that Allendale's subrogation claim might be barred by a statute of limitations compelled finding a justiciable controversy. As the court held, "a clear need" existed for the present action because if the action were not maintainable, "Allendale would be forced to choose between giving up its right to appeal the state court award to its insured, and giving up its subrogation rights against the defendant." *Id*. In reaching this conclusion, the court distinguished its holding in *National Valve & Mfg. Co. v. Grimshaw*, 181 F.2d 687 (10th Cir. 1950) where the court sustained the district court's dismissal of a contractor's claim for indemnity while appeal of the judgment against it was pending in state court. The court stated: "[t]here was no indication in that case that a statute of limitations problem existed, or other circumstances revealed a need for immediate adjudication; the court's decision was upheld as not an abuse of discretion in the circumstances of the case." *Allendale*, 804 F.2d at 594. The court further stated: "[t]he lack of any need for an early determination of the right to indemnification distinguishes *National Valve* from the case before us." *Id*.

Unlike *Allendale*, Essex is not a party to the underlying state court litigation and does not face either an actual or prospective judgment issued directly against it. Nor has Essex identified any

other need for immediate adjudication like that present in *Allendale*. As the Court held in *Allendale*, these factors rendered the case distinct.

The parties have not cited any case addressing Article III's case or controversy requirement in the context presented by C&D Dozer's motion. But a recent decision of another court, on facts analogous to those presented here, concludes that Article III's requirements are not satisfied under these circumstances. *See Pennsylvania Mfrs. Indem. Co. v. Air Power, Inc.*, No. 1:13CV217, 2014 WL 1513966 (M.D. N.C. April 16, 2014) (unpublished op.).

In *Air Power*, Plaintiff, Pennsylvania Manufacturers Indemnity Company (PMIC) brought a declaratory judgment action against its insured, Air Power, Inc. (Air Power) and two other defendants, an injured third-party, Steven Ray Freeman (Freeman) and a potential joint-tortfeasor, Graco, Inc. (Graco). PMIC sought a declaration that it was not required to defend or indemnify Air Power in an underlying state court personal injury action brought by Freeman against Air Power and Graco.

Addressing the relationship of the parties to the federal declaratory judgment action, the Court stated:

> Here, Plaintiff does not insure Defendant Graco and Defendant Graco is not the injured party. Rather, the only possible connection between Defendant Graco and Plaintiff is that Defendant Graco and Defendant Air Power could be jointly and severally liable for damages if Defendant Freeman prevails in Count 4 of the underlying [state court] litigation. Thus, if Plaintiff has a duty to indemnify Defendant Air Power, then there potentially could be a dispute involving both Plaintiff and Defendant Graco as to payment of those damages for which Defendant Graco and Defendant Air Power could be jointly and severally liable.

*Id*. at *5. The court then determined that "Defendant Graco's only potential stake in the outcome of the coverage dispute between Plaintiff and Plaintiff's insured, Defendant Air Power, is that it may

ultimately be held to be a joint tortfeasor with Defendant Air Power in . . . the underlying litigation."
*Id*. at *6. The court concluded that "this sole potential connection between Defendant Graco and Plaintiff is too attenuated and remote to be a case or controversy under Article III" and further "fail[s] to allege an actual case or controversy between [Plaintiff] and Defendant Graco" as required by the Declaratory Judgment Act. *Id*.

In reaching this conclusion, the court relied upon *Lott v. Scottsdale Ins. Co.*, 811 F. Supp.2d 1224 (E.D. Va. 2011) as instructive and in particular, the *Lott* court's statement that "[u]nlike a tort claimant, a joint tortfeasor's stake in the outcome of a coverage dispute between a different tortfeasor and that tortfeasor's insurer is generally too attenuated and remote to fall within Article III." *Id*., 811 F. Supp.2d at 1231. In *Lott*, a similar issue was presented to the Court, though the parties were aligned differently. The insurance company of the first tortfeasor was named as a defendant and the plaintiffs brought an action for a declaratory judgment that the insurance company was required to defend and indemnify its insured in an underlying state court action.

In *Lott* the parents of a child who drowned at a swimming club brought a state court action against two alleged tortfeasors, the swim club and the company hired by the swim club to manage its operations. The swim club and the management company each notified their respective liability insurers. The swim club's insurer accepted the defense and acknowledged it had a duty to indemnify its insured for any damages it may have to pay in the state court litigation. But the management company's insurer denied owing its insured either a duty to defend or indemnify.

As a result, the Lotts, together with the swimming club and its insurer, brought a declaratory judgment action against the management company and its insurer seeking a declaration that the insurer was required to defend and indemnify the management company. The court realigned the

13

management company as a plaintiff, leaving its insurer as the sole defendant in the declaratory judgment action.

The court first determined that the Lotts, as the injured third parties, had standing to sue and that a justiciable controversy existed between them and the management company's insurer.[7] Moreover, the parties did not dispute that the management company, as the insured, had standing to sue.

As to the swim club – the second tortfeasor – and its insurer, however, the Court concluded those parties did not have standing to sue. *See Lott*, 811 F. Supp.2d at 1231 ("Unlike a tort claimant, a joint tortfeasor's stake in the outcome of a coverage dispute between a different tortfeasor and that tortfeasor's insurer is generally too attenuated and remote to fall within Article III."). The *Lott* court noted that "[n]ot surprisingly, the parties have identified no case, nor has any been found, holding that a joint tortfeasor has standing to participate in a declaratory judgment action concerning the duties to defend or indemnify owed to the other tortfeasor by its insurer." *Id*. The court concluded that the "remoteness of any injury in fact to [the swim club] and [its insurer] is quite apparent . . . ." *Id*. at 1232. The court relied on many contingent factors including the fact that any damages would have to be awarded against both joint tort-feasors and contribution would only be permitted if the swim club were required to pay more than its pro rata share. *Id*. The court found the only present injury asserted by the swim club and its insurer was "an inability to settle the case without sufficient

---

[7]The Court based this holding on two aspects of Virginia law. First, Virginia law allowed the Lotts to sue the insurance company directly for any outstanding amount of an unsatisfied judgment against its insured. Second, Virginia law deemed the Lotts, as tort claimants, third-party beneficiaries of the insurance policy. *See Lott*, 811 F. Supp. 2d at 1230.

insurance money in the 'pot.'" but that this injury "plainly does not qualify as an injury-in-fact . . . ." *Id.*

The Court finds persuasive the decisions in *Air Power* and *Lott*, which address circumstances virtually identical to those presented in this action. The parties here do not dispute that under Oklahoma law, C&D Dozer has no right to seek contribution directly against Essex, as was the case in *Lott.* And, as discussed, the Tenth Circuit authority relied upon by Essex is distinguishable from the circumstances presented here. Therefore, the Court finds no justiciable controversy as between C&D Dozer and Essex, and Essex's claims against C&D should be dismissed without prejudice. Necessarily, therefore, the Court finds Essex's claims against Butiminous and Mercury should be dismissed without prejudice.

### D.     Discretionary Factors

In addition, the Court finds discretionary factors warrant dismissal of C&D Dozer, Butiminous and Mercury from this action. This declaratory judgment action will not resolve any controversy among these parties in this litigation nor will it resolve any controversy in the state court litigation as Essex is not a party to that litigation. And to the extent resolution of factual issues in this case decided against C&D Dozer might impair its defenses in the state court action (e.g., the quality of work provided by C&D Dozer), the Court's exercise of jurisdiction may improperly encroach upon the state court's jurisdiction.

## III.     Conclusion

For the reasons set forth, the law of the case doctrine does not apply as the issues presently before the Court were not addressed in the Court's September 9, 2013 Order. Because no justiciable case or controversy exists between Essex and Defendants C&D Dozer Services, Mercury and

Bituminous, dismissal of these defendants is proper as the Court lacks subject matter jurisdiction over the claims brought against them.

IT IS THEREFORE ORDERED that Defendant C&D Dozer Services L.L.C.'s Motion for Summary Judgment, construed as a motion pursuant to Fed. R. Civ. P. 12(b)(1), is GRANTED and Plaintiff's claims as to this defendant are dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff's claims against Defendants First Mercury Insurance Company and Bituminous Casualty Corporation are dismissed without prejudice.

IT IS SO ORDERED this 13th day of July, 2015.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE